IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARLES ROBERT POTTER, individually and as representative of the Estate of CHARLES ANTHONY POTTER, deceased, §§§§§§ Plaintiff, §§ DELORES POTTER, §§ Intervenor, §§§ v. §§ 24 HOUR FITNESS USA INC., §§ Defendant. §§ | No. 3:12-cv-453-P |

## ORDER

Now before the Court is Plaintiff Charles Robert Potter's Motion for Partial Summary Judgment on Defendant's Affirmative Defense of Waiver and Release, filed on January 3, 2014. Doc. 56. Defendant filed a Response on January 24, 2014. Doc. 59. Plaintiff filed a Reply on February 14, 2014. Doc. 63.

Also before the Court is Plaintiff Charles Robert Potter's Motion for Partial No-Evidence Summary Judgment on Defendant 24 Fitness [sic] USA, Inc.'s Affirmative Defense of Comparative Negligence/Fault, filed on March 17, 2014. Doc. 66. Defendant filed a Response on April 7, 2014. Doc. 75.

And finally, also before the Court is Defendant 24 Hour Fitness's Motion for Summary Judgment, filed on March 17, 2014. Doc. 67. Plaintiff and Intervenor filed a Response on April 17, 2014. Doc. 83. Defendant filed a Reply on May 1, 2014. Doc. 89.

After reviewing the parties' briefing, the evidence, and the applicable law, the Court DENIES Plaintiff's Motion for Partial Summary Judgment on Defendant's Affirmative Defense of Waiver and Release, Doc. 56, DENIES as MOOT Plaintiff's Motion for Partial No-Evidence Summary Judgment on Defendant 24 Fitness USA, Inc.'s [sic] Affirmative Defense of Comparative Negligence/Fault, Doc. 66 and GRANTS Defendant's Motion for Summary Judgment, Doc. 67.

I.   **Background**

This suit arises out of the death of Charles Anthony Potter who collapsed on March 13, 2011, while working out at a 24 Hour Fitness USA Inc. facility in Rockwall, Texas ("24 Hour Fitness"). According to the complaint, none of 24 Hour Fitness's employees responded to his collapse, even though an automated external defibrillator ("AED") was on the premises. Another patron at the 24 Hour Fitness performed CPR on Charles Anthony until emergency personnel arrived and performed resuscitation efforts including the use of an AED. While Potter's heart started again, he was in a non-responsive state. He underwent medical treatment and was hospitalized from the date of his injury until his death on July 27, 2011. Plaintiff to the suit is Charles Robert Potter, Charles Anthony's father, who sues individually and on behalf of his son's estate. Charles Anthony's mother has, Delores Potter, has also intervened to sue individually. (The Court refers to them collectively as the Potters.)

Both parties now seek summary judgment on a variety of issues.

II.   **Summary Judgment Standard**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Order
3:12-CV-453-P
Page 2 of 14

Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *See Celotex*, 477 U.S. at 323. However, all evidence and reasonable inferences to be drawn there from must be viewed in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party defending against the motion for summary judgment cannot defeat the motion, unless he provides specific facts demonstrating a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See id.* at 249-50. In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc); *see also Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 619 (5th Cir. 1993) ("[U]nsubstantiated assertions are not competent summary judgment evidence." (citing *Celotex*, 477 U.S. at 324)). Further, a court has no duty to search the record for evidence of genuine issues. Fed. R. Civ. P. 56(c)(1) & (3); s*ee Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). It is the role of the fact finder, however, to weigh conflicting evidence and make credibility determinations. *Liberty Lobby*, 477 U.S. at 255.

## III. Waived Claims

24 Hour Fitness moved for summary judgment on a list of claims that the Potters do not respond to at all. The evidence 24 Hour Fitness cited in its brief is competent evidence that tends to disprove the Potters' claims for fraudulent misrepresentation, fraudulent inducement, violation of the Texas Deceptive Trade Practices Act, violation of the Texas Health Spa Act, and violation of the Texas Health and Safety Code. See Doc. 68 at 36-42. Because the Potters have failed to rebut the evidence, no genuine issue of material fact exists. The Court grants 24 Hour Fitness summary judgment on each of those claims.

## IV. Negligence And Gross Negligence

The Potters' only remaining claims are for negligence and gross negligence, which 24 Hour Fitness also requests summary judgment on. "To establish negligence, a party must establish a duty, a breach of that duty, and damages proximately caused by the breach." *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). Gross negligence is negligence "(1) which, when viewed objectively from the defendant's standpoint at the time of its occurrence, involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) of which the defendant has actual subjective awareness of the risk involve, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." *Kolius v. Center Point Energy Hous. Elec. LLC*, 422 S.W.3d 861, 865 (citing *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012); Tex. Civ. Prac. & Rem. Codee § 410.001(11)).

24 Hour Fitness contends that it did not owe a duty to Charles Anthony in these circumstances. "Whether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists." *Kroger Co.*, 197 S.W.3d at 794. Critical to the existence of a duty are the facts and circumstances of the situation. Because it is 24 Hour Fitness that has

moved for summary judgment, the Court views the evidence in the light most favorable to the Potters. Even on that evidence, the Court finds that 24 Hour Fitness did not owe Charles Anthony a duty.

    a. Summary Judgment Evidence[1]

Charles Anthony Potter and his friend Jarret Jack were working out at 24 Hour Fitness on March 13, 2011, when Charles Anthony collapsed without warning. Doc. 91 at 328. (No evidence has been provided suggesting his collapse was the result of using 24 Hour Fitness equipment.) His friend Jarret Jack immediately checked for a pulse and called 911 when he found none. Doc. 91 at 329.

As a crowd began to gather around Charles Anthony, Derrick Holcomb came upon the scene. Doc. 91 at 349.[2] Holcomb had no previous relationship with Charles Anthony or Jack, Doc. 91 at 350, but when he saw him unconscious, blue-faced, and with saliva dripping from his mouth, he began applying CPR immediately. Doc. 91 at 350 ("Charles was laying there, and he was—he was—like I said, he was blue and unconscious. He had slobber coming out of his mouth."); Doc. 91 at 351 ("I wiped his mouth off and started doing CPR on him.") As Holcomb tended to Charles Anthony, a 24 Hour Fitness employee informed him that an ambulance had been called and that the employee would wait at the front entrance to guide the personnel to Charles Anthony. Doc. 91 at 352. After five to six minutes of CPR, a group of emergency medical technicians ("EMT") arrived and relieved Holcomb of caring for Charles Anthony.

---

[1] The evidence is somewhat disputed. The Potters believe there are contradictions between their witnesses' testimony and 24 Hour Fitness's account of the events. 24 Hour Fitness sees no conflict. For purposes of this motion the Court considers only the Potters' witnesses version of the events considered in a light most favorable to the Potters.

[2] It is unclear from the record how much time passed between Charles Anthony's collapse and Derrick Holcomb's arrival. Regardless, it does not impact the Court's analysis.

Doc. 91 at 351. The EMTs continued CPR and also tried to revive Charles Anthony by using an AED but were unsuccessful for roughly 20 minutes. Doc. 91 at 353-54.

The Potters put heavy emphasis on what 24 Hour Fitness's employees did not do after Charles Anthony collapsed: they did not personally tend to Charles Anthony by retrieving and using an on-site AED to help resuscitate Charles Anthony.[3] Doc. 91 at 353-54.

b. Analysis

The proposed duty in this case is for 24 Hour Fitness to administer an AED to its patrons when needed.[4] The Court concludes that on the facts of this case no such duty exists.

To determine whether a legal duty exists, Texas courts "consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 729 (5th Cir. 2002) (quoting *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 663 (Tex. 1999)). The Texas Supreme Court has distilled those factors to three categories: "(1) the

---

[3] One of 24 Hour Fitness's employees, Randy Browner, testified that he helped tend to Charles Anthony, including retrieving and prepping an AED. Doc. 69-1 at 74. Browner stated that by the time the AED was prepared, he had to show the emergency personnel to Charles Anthony. Doc. 69-1 at 76-77. Again, because this is a motion for summary judgment and the Potters insist this is not the right version of events, the Court ignores this evidence in favor of the Potters' interpretation of the events.

[4] The Potters actually argue that the duty is more comprehensive than that. They believe 24 Hour Fitness needs to have a response plan in place for responding to cardiovascular emergencies like the one that Charles Anthony experienced. As part of that comprehensive response plan, they believe 24 Hour Fitness was required administer the AED. Their claims of injury, however, hinge on the fact that 24 Hour Fitness did not administer the AED. *See* Doc. 83 at 21 ("Expert McInnis's Declaration further sets forth how 24 Hour Fitness breached its duty of care , and how such conduct was the proximate cause of the injuries and resulting death… 'The defendants collectively failed to discharge that duty by not deploying its own AED in a timely manner.'") (bracketed insertion omitted). In other words, even if 24 Hour Fitness had abided by the Potters' proposed plan, the prevention of Charles Anthony's death would have depended on the use of an AED. Since this omission is the alleged breach of duty, the Court focuses on whether 24 Hour Fitness had that specific duty.

Indeed, given the facts of this case, it would be impossible to argue that 24 Hour Fitness had to undertake other remedial measures that were not taken. All evidence indicates that emergency services were called immediately and that someone engaged in CPR. Nothing indicates that 24 Hour Fitness should have ensured a call was made quicker or that CPR should have been performed better. The only thing that stands out is 24 Hour Fitness's failure to use an AED.

Order
3:12-CV-453-P
Page 6 of 14

relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy considerations." *See Texas Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33-34 (Tex. 2002). "The decision to impose a new common law duty involves complex considerations of public policy including social, economic, and political questions and their application to the facts at hand." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 410 (Tex. 2009).

Texas law rarely imposes a duty to aid an injured party except on the individual who caused the injury. *See Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 633 ("[I]f a party negligently creates a dangerous situation it then becomes his duty to do something about it. On the other hand, it may be said generally, as a matter of law, that a mere bystander who did not create the dangerous situation is not required to become the good Samaritan and prevent injury to others.") (internal ellipses and quotation marks omitted) (citing *Buchanan v. Rose*, 159 S.W.2d 109, 110 (Tex. 1942)); *Applebaum v. Nemon*, 678 S.W.2d 533, 535 (Tex. Ct. App. 1984) ("Deeply rooted in the common law is the doctrine that a person owes no duty to render aid to one for whose initial injury he is no liable."), *writ ref'd n.r.e.* However, "a special relationship may give rise to the duty to aid or protect. The relationship must exist between the parties, and the risk of harm, or of further harm, must arise in the course of that relationship." *Howell v. City Towing Assocs., Inc.*, 717 S.W.2d 729, 733 (Tex. Ct. App. 1986). Examples of relationships that give rise to a duty to aid are that of a daycare and a child, *see Applebaum*, 678 S.W.2d 533, or a common carrier and a passenger, *see Howell*, 717 S.W.2d 729. Even when a special relationship gives rise to a duty to provide aid, the duty may be limited to certain forms of aid that do not require special training. *Id.* at 537. Thus, a party seeking to impose a duty to render aid has to

show that a special relationship exists and that the defendant has a duty to perform the particular type of aid.

But even assuming that 24 Hour Fitness has a special relationship with its patrons, it is not under a duty to administer an AED to unconscious patrons. Had there been evidence that 24 Hour Fitness held itself out as prepared to administer an AED to patrons or that it hired personnel who were equipped to respond to cardiovascular emergencies, the result might be different. But the Potters have not presented any evidence of that—no advertising, no brochures, no testimony stating that oral promises were made. On the facts of this case, the Court cannot find that anything explicit about the special relationship of the parties mandated that 24 Hour Fitness administer the AED.

Whatever implicit duties the relationship between 24 Hour Fitness and its patrons might give rise, they do not include a duty as significant as administering a medical device like an AED under these circumstances. To understand why, consider how Texas courts have treated daycare centers. The special relationship between the day care center and the children is inherently one that requires day care centers to render aid. *See Applebaum*, 678 S.W.2d at 535 ("The relationship is an economic one in which the day care center in exchange for a fee agrees to care for the child and to protect the child from harm during the time the child is in the custody of the day care center." ) But even then aid is limited to "procure medical assistance as soon as possible" rather than administering CPR. *Id.* at 537. Even those establishments that have a special relationship to their patrons are not required to engage in aid that requires medical training. Instead, it has been limited to procuring the assistance of medical personnel. *See also Howell*, 717 S.W.2d 729 (requiring common carrier to procure emergency personnel but omitting any discussion of rendering medical services).

Rejecting a duty to administer an AED is consistent with other reasoning found in *Applebaum v. Nemon*. Because day care centers were regulated by the Texas Department of Human Resources, the court felt it was inappropriate to impose additional requirements through a judicial finding of duty. *Id.* ("The Department does not require medical training or expertise of day care center employees. Such a requirement, if considered wise and valuable, should be imposed by the legislature or the Department of Human Resources and not by this court."). And so it is here. The Texas Health and Safety Code has a section covering automated external defibrillators. *See* Tex. Health & Safety Code § 779; see also 25 Tex. Admin. Code § 157.41. The law does not impose a requirement for owners of AEDs to use them in a given situation. To impose that duty here it would graft additional requirements into Texas law that is better left to the Texas legislature for deciding.

The Potters attempt to establish a duty based on expert testimony from a professor of Exercise and Health Science, Kyle J. McInnis. McInnis's testimony outlines two things: first, the likelihood that it was foreseeable that a cardiovascular emergency like Charles Anthony's would occur; second, all the benefits that would come from requiring 24 Hour Fitness to use its AED on non-responsive patrons within 5 minutes of the start of a cardiovascular emergency. Doc. 85 at 105-12. While expert testimony can be helpful for understanding the likelihood of harm and a cost of imposing a duty, the determination of whether a duty exists is still ultimately a matter of law for the Court. McInnis's testimony is not dispositive.[5] On the facts of this case, the Court finds it unpersuasive for establishing a duty against the background presumption that parties are not required to proactively render aid.

---

[5] Moreover, much of McInnis's testimony depends on the American College of Sports Medicine Health/Fitness Facility Standards and Guidelines which expressly state they are not meant to establish a duty in a legal context, Doc. 6-1 at 218, and other Courts have rejected reliance on them for that reason, *see Bloom v. ProMaxima Mfg. Co.*, 669 F. Supp. 2d 321, 327 (W.D. N.Y. 2009).

As an alternative basis for finding a duty, the Potters argue that 24 Hour Fitness's internal operating procedures establish that a duty to use the AED existed. Regardless of what 24 Hour Fitness's procedures require employees to do, a "company's internal policies or procedures will not create a negligence duty where none otherwise exists." *Cleveland Reg'l Med. Ctr. v. Celtic Props.*, L.C., 323 S.W.3d 322, 351 (Tex. Ct. App. 2010), *pet. denied*. So that is no basis for creating a legal duty either.

On the facts of this case, 24 Hour Fitness did not have a duty to administer an AED to Charles Anthony when he collapsed at their gym. Without a duty, the Potters' claims of negligence and gross negligence fail as a matter of law. The Court grants 24 Hour Fitness summary judgment on both of those claims.

## V. Affirmative Defense Of Release

Even if the Court were to find a duty, the Court notes that 24 Hour Fitness's affirmative defense of release bars the Potters from recovering on its negligence claim.

### a. Summary Judgment Evidence

The evidence surrounding 24 Hour Fitness's defense of release is straightforward. Charles Anthony Potter became a member of 24 Hour Fitness by asking his step-mother, Sharon Potter, for a membership. Doc. 69-1 at 11 ("Q. So Ms. Potter, Charles Anthony had told you that for Christmas that year he wanted a membership at 24 Hour Fitness? A. Correct.") To give him his gift, Sharon and Charles Anthony went to 24 Hour Fitness together where she signed him up for a membership that she would pay for. *See* Doc. 69-1 at 11 ("Q... Charles Anthony was basically sitting next to you when you went through [the sign-up] process, correct? A. Yes, he was."). Consequently, Sharon, rather than Charles Anthony, signed the documents necessary for

Charles Anthony to join, though the membership agreement was in Charles Anthony's name. *See* Doc. 57-2 at 1 (designating "Charles Potter" as the member).

Included in the documents is a section entitled "Release of Liability – Assumption of Risk – Buyer's Right to Cancel – Membership Term" that uses conspicuous print to warn gym members of risks for working out at 24 Hour Fitness. Doc. 57-2 at 3. Most relevant is a portion that states

> you... agree that 24 Hour, its officers, directors, employees, volunteers, agents and independent contractors will not be liable for any injury, including, without limitation, personal, bodily, or mental injury, economic loss or any damage to you, your spouse, guests, unborn child, or relatives resulting from any negligence of 24 Hour or 24 Hour's behalf or anyone using the facilities whether related to exercise or not.

Doc.57-2 at 3. Sharon's signature is immediately below the paragraph that contains the Release Clause. Charles never signed the agreement himself, but did attend 24 Hour Fitness as a member.

Based on the Release Clause, 24 Hour Fitness alleges that Charles Anthony Potter "voluntarily waived the right to sue for the damages he now claims in this lawsuit and/or has released 24 Hour Fitness from any liability." Doc. 44 at 5; *see also Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 918 (Tex. Ct. App. 2013) ("A release operates to extinguish a claim or cause of action and is an absolute bar to the released matter; it is an affirmative defense."), *no pet.*

b. Analysis

The Potters argue that the Release Clause is inapplicable for two reasons.[6]

---

[6] Their arguments are unrelated to the Release Clause's validity as a contractual term, which makes sense since others Courts have upheld this precise type of agreement. *See, e.g., Ramirez v. 24 Hour Fitness USA, Inc.*, 549 Fed. App. 262 (5th Cir. 2013) (unpublished).

Order
3:12-CV-453-P
Page 11 of 14

First, the Potters argue that the entire gym membership agreement is invalid because 24 Hour Fitness failed to "include the health spa operator's certificate of registration or an identification number" in the contract as required by Tex. Occ. Code § 702.301(a)(3). 24 Hour Fitness has pointed out that the membership agreement that the Potters submitted in evidence does indeed include a number to comply with the statute. *See* Doc. 57-2 at 3 (look to the top-left corner, printed as "24 Hour ID Number: 080501"). Nothing in the Potters' Reply brief contradicts this showing, essentially conceding the point. Consequently, the Release Clause is not inapplicable on those grounds.

The second argument is that the Release Clause cannot apply because Sharon, not Charles Anthony, signed the agreement. 24 Hour Fitness argues that Charles Anthony is bound by the agreement because Sharon acted as his agent when she signed the agreement.

"A principal is liable for his agent's acts which the agent has actual or apparent authority from the principal to do, and for acts which the principal ratifies." *See Sociedad De Solaridad Social El Estillero v. J.S. McManus Produce Co.*, 964 S.W.2d 332, 334 (Tex. Ct. App. 1998) (citations omitted), *no pet.* "Ratification can occur through acts, conduct, or affirmative acquiescence by the principal." *Little v. Clark*, 592 S.W.2d 61, 64 (Tex. Ct. app. 1979), *writ ref'd n.r.e.* That includes when a principal "retains the benefits of the [agent's] action after acquiring full knowledge of the unauthorized conduct." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 536 (Tex. 2003).

The facts unambiguously show that Charles Anthony ratified Sharon's signing of the membership agreement on his behalf.[7] Charles Anthony was present when Sharon signed him

---

[7] The parties dispute whether Sharon had apparent authority to sign on Charles Anthony's behalf. That depends on a factual question of whether 24 Hour Fitness justifiably relied on Charles Anthony's behavior during the sign-up period. *See Expro America, LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 925 (Tex. Ct. App. 2011) ("A

up for the 24 Hour Fitness membership, so he undoubtedly knew a contract controlled his membership. By attending the club after the signing, Charles Anthony "retained the benefits" of the 24 Hour Fitness membership. Other courts have found almost identical facts to constitute ratification. *See Abramson v. Am. Online, Inc.*, 393 F. Supp. 2d 438, 441 (N.D. Tex. 2005) (finding ratification when a son signed up his mother for an email account because she "knew her service... was subject to a contract"). Charles Anthony was subject to the terms and conditions of his membership by continuing to attend 24 Hour Fitness aware of the contract.

The Potters try to escape this result by claiming that ratification requires that Charles Anthony have had "an intent to relinquish his legal rights against 24 Hour Fitness." Doc. 83 at 34. The only support that the Potters give for that proposition is *Huffington v. Upchurch*, 532 S.W.2d 576 (Tex. 1976). The case—which deals with whether business partners had abandoned their rights to a business project, *id.* at 579—is completely inapposite in determining ratification. While a principal must gain "full knowledge" of the agent's conduct, he does not need to have knowledge of the legal effect of all of the conduct. Knowing that an agent signed a contract on the principal's behalf is the material fact necessary for ratification to occur here. This accords with the general principle that in receiving the benefits of a transaction, the principal also takes on the burdens. *See Land Title Co. of Dall. V. F.M. Sitgler, Inc.*, 609 S.W.2d 754, 758 (Tex. 1980) ("A principal may not, in equity, ratify those parts of the transaction which are beneficial and disavow those which are detrimental. Ratification extends to the entire transaction.").

---

party seeking to recover under an apparent-authority theory must show justifiable reliance on the principal's words or conduct resulting in harm to the party."), *pet. denied.* For purposes of this motion, the Court can assume that authority was not given to explore whether Charles Anthony ratified Sharon's signing on his behalf.

The evidence, viewed in a light most favorable to the Potters, shows that 24 Hour Fitness's defense of release bars the Potters' claims of negligence as a matter of law.[8] Therefore, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment and GRANTS Defendant's Motion for Summary Judgment as it applies to the Potters' claim of negligence.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Partial Summary Judgment on Defendant's Affirmative Defense of Waiver and Release, Doc. 56, DENIES as MOOT Plaintiff's Motion for Partial No-Evidence Summary Judgment on Defendant 24 Fitness USA, Inc.'s [sic] Affirmative Defense of Comparative Negligence/Fault, Doc. 66 and GRANTS Defendant's Motion for Summary Judgment, Doc. 67.

**IT IS SO ORDERED.**

Signed this __6th__ day of June, 2014.

*Jorge A. Solis*
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

---

[8] In their briefing, 24 Hour Fitness argues that the Release Clause also bars the Potters' claims of fraudulent misrepresentation, fraudulent inducement, violation of the Texas Deceptive Trade Practices Act, violation of the Texas Health Spa Act, and violation of the Texas Health and Safety Code. Since the Potters have not pursued those claims, the Court does not need to determine whether the Release Clause, which is limited to "injury... resulting from negligence," extends to those claims.